**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

1. UNITED STATES OF AMERICA,  )
  )
           Plaintiff,  )
  )
         v.  )    Civil Action No. ___**CIV-24-446-SPS**
  )
2. OHOPAKI GENERAL CONTRACTING  )
   AND MECHANICAL, INC; and  )
   ROBERT LYNN WHITE,  )
  )
          Defendants.  )

## COMPLAINT

The United States of America, through its undersigned attorneys, by the authority of the Attorney General, alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for damages and civil penalties arising from false claims presented or caused to be presented by defendants Ohopaki General Contracting and Mechanical, Inc., ("Ohopaki") and Robert Lynn White ("White") (collectively, "Defendants") in violation of the False Claims Act, 31 U.S.C. §§ 3729-33 ("the FCA").

2.     The claims in this case arise from the defendants' role in causing the Department of the Air Force and United States Army Corps of Engineers to award approximately $15 million in contracts that were set-aside for performance by service-disabled, veteran-owned (SDVO) small businesses to Ohopaki. Defendant White was the sole owner of Ohopaki.

3.     As described more fully below, from 2015 to 2020 the defendants submitted, caused to be submitted, or conspired to submit or cause to be submitted, false claims or false statements material to claims in order to obtain or promote the award of federal SDVO small business set-aside contracts from the United States to Ohopaki. In connection with the award of

these contracts, the defendants certified or caused certifications or statements to be made that Ohopaki met all requirements to be an SDVO small business with knowledge or reckless disregard for the truth of the matter that Ohopaki did not, in fact, meet such requirements and was not entitled to the award of such contracts. By diverting contracts and benefits therefrom intended for service-disabled veterans towards an ineligible company, defendants undercut the purpose of statutorily created programs to encourage contract awards to legitimate SDVO small businesses. The United States did not receive the intended benefits of a SDVO small business receiving and performing federal contracts. These wrongful actions further induced or resulted in the government's inappropriate award of these contracts and payments of millions of dollars on these federal contracts. Defendants, therefore, are liable to the United States under the FCA for treble damages and civil penalties as permitted by law.

4. Additionally, through these actions, the defendants intended to defraud the government through the submission of these material misrepresentations, the government reasonably relied upon these representations, and the government suffered damage as a result of such reliance in making payments to ineligible contractors and through the diversion of contractual opportunities and the acquisition of profits that were intended for legitimate SDVO small businesses. As a result, defendants are responsible for common law fraud and are liable to the government for damages.

5. Further, as a result of defendants' misrepresentations and fraudulent conduct, defendants were unjustly enriched at the government's expense, and equity and good conscience militate against permitting defendants to retain this enrichment. Defendants, therefore, are liable to the government for all moneys unjustly earned.

## JURISDICTION AND VENUE

6.     This Court has personal jurisdiction over all defendants pursuant to 31 U.S.C. § 3732(a) because all defendants can be found in, reside in, or transact business in this District and the acts proscribed by 31 U.S.C. § 3729 occurred in this District.

7.     Venue is proper in the Eastern District of Oklahoma under 31 U.S.C. § 3732 and 28 U.S.C. § 1391(b) because all of the defendants reside in and transact business in this district, and acts proscribed by 31 U.S.C. § 3729 occurred in this district.

## THE PARTIES

8.     The Plaintiff in this action is the United States of America, suing on behalf of the Department of Defense, Department of the Air Force, and the Army Corps of Engineers.

9.     Defendant White is an individual and resident of Heavener Oklahoma, and the owner of Ohopaki.

10.     Defendant Ohopaki is a company organized under the laws of Oklahoma with a business address of 102 Pitchford Lane, Heavener, OK, 74937.

11.     Prior to the filing of this lawsuit, the United States notified White and Ohopaki of potential civil claims under the FCA and other federal statutes and regulations related to the false statements and payments made between September 26, 2014 and December 23, 2020, all related to the federal contract awarded to Ohopaki.  Defendants entered into a tolling agreement, agreeing that May 17, 2024 and November 15, 2024 shall be excluded from calculation when determining whether Potential Claims are time-barred by statute of limitations, laches, or any other time-related defenses.

## STATUTORY AND REGULATORY BACKGROUND

*VA Requirements*

12.    Section 502 of the Veterans Benefits, Health Care, and Information Technology Act of 2006 ("Veterans Benefits Act"), P.L. 109-461, as codified at 38 U.S.C. § 8127(a)(1)(B), authorizes the VA Secretary to establish a goal that not less than three percent of VA contracts and subcontracts be awarded to SDVO small businesses.  The purpose of this goal is to "increase contracting opportunities for small business concerns owned and controlled by … veterans with service connected disabilities." *Id*. § 8127(a)(1).

13.    The Veterans Benefits Act permits contracts to be set aside for SDVO small businesses either on a sole-source basis (which are not awarded through a competition), if certain conditions are met, or through limited competitions in which only veteran-owned firms can submit bids. *Id*. §§ 8127(c) and (d).  The statute establishes a priority for the award of contracts to small businesses with the highest priority being SDVO firms. *Id*. § 8127(i)(1).

14.    Under the Veterans Benefits Act, firms are only eligible for the SDVO contracting program if the VA determines that they are "owned and controlled by … a veteran with a service-connected disability." *Id*. §§ 8127(f)(4); accord 38 C.F.R. § 74.2.

15.    Regulations the VA issued to implement these statutory provisions state that to qualify for a contract that is set aside for SDVO small businesses, a firm must be at least 51 percent unconditionally and directly owned by one or more service disabled veterans. 38 C.F.R. § 74.3. Additionally, VA regulations provide that the service disabled veteran must control "both the strategic policy setting exercised by boards of directors and the day-to-day management and administration of business operations." *Id*. § 74.4(b).

16.     Under the VA regulations, although non-veterans may be involved in the management of a firm, VA regulations provide that the non-veteran may not: (1) exercise actual control or have the power to control the applicant or participant; or (2) receive compensation from the applicant or participant in any form as directors, officers or employees, including dividends, that exceeds the compensation to be received by the highest officer who must be a service-disabled veteran. *Id*. § 74.4(g).

*SBA Requirements*

17.     The Small Business Act (15 U.S.C. §§ 631 et. seq.) also provides that not less than three percent of all prime and subcontracts awarded by all federal agencies and departments should be awarded to SDVO small businesses. 15 U.S.C. § 644(g)(2).  2003 amendments to the Small Business Act also established a program separate from the Veterans Benefits Act to promote the award of contracts by all federal agencies to SDVO small business. Pub. L. 108-183, Title III, § 308, codified at 15 U.S.C. § 657f.  Under the Small Business Act, federal agencies may award contract to SDVO firms: (1) on a sole-source basis for contracts of $5 million or less for manufacturing contracts, and $3 million or less for other contracts, and (2) through competitions limited to SDVO small businesses. *Id*.

18.     The Small Business Act further defines an SDVO small business similar to the VA regulations in that a firm must be 51 percent owned by a veteran with a service-connected disability, and "the management and daily business operations of [the firm] are controlled by one or more service-disabled veterans." 15 U.S.C. § 632(q)(1).

19.     The SBA regulations implementing the non-VA SDVO small business contracting program require that "the management and daily business operations of the concern must be controlled by one or more veterans.  To be an eligible SDVOSB, the management and daily

5

business operations of the concern must be controlled by one or more service-disabled veterans (or in the case of a veteran with permanent and severe disability, the spouse or permanent caregiver of such veteran). Control by one or more qualifying veterans means that one or more qualifying veterans controls both the long-term decision-making and the day-to-day operations of the Applicant or Participant." 13 C.F.R. § 128.203.

20. SBA regulations provide that firms must represent with their initial offer on a specific contract that they meet the criteria to be an SDVO small business concern. 13 C.F.R. § 125.15(a).

21. The Small Business Act establishes that firms which misrepresent their status as an SDVO small business "shall be subject to" civil prosecution under the FCA. 15 U.S.C. §§ 637(m)(5) and (6); 657f(d).

*Federal Acquisition Regulation*

22. Under the Federal Acquisition Regulation (FAR), at the time that a firm submits an offer on a contract that is set-aside for SDVO small businesses the company "must represent to the contracting officer that it is a … Service-disabled veteran-owned small business concern." 48 C.F.R. § 19.1403(b).

23. Similar to the VA and SBA regulations, FAR section 52.212-3, Offeror Representations and Certifications, defines a "Service-disabled veteran-owned small business concern" as a small business concern that is 51 percent owned by one or more service-disabled veterans, "[t]he management and daily business operations of which are controlled by one or more service-disabled veterans." 48 C.F.R. § 52.212-3.

24.    FAR section 52.219-1(c)(7) provides for the following contractor representation for SDVO small businesses: "The offeror represents as part of its offer that it __ is, ___ is not a service-disabled veteran-owned small business concern."

25.    Beginning in or about 2005, FAR Subparts 4.11 and 4.12 required all contractors to complete representations and certifications in the Online Representation and Certification Application, including this SDVO small business certification. Part 4 also required contracting officers to review a contractor's online representations and certifications before awarding a contract.

*The Fraudulent Scheme*

26.    The defendants violated the FCA by fraudulently submitting, causing to be submitted, or conspiring to submit or cause to be submitted, false claims and false statements material to false claims in connection with the award of SDVO contracts and payments to Ohopaki by the Department of the Air Force and the  United States Army Corps of Engineers either as a sole-source award intended for eligible SDVO small businesses or through competitions that were intended to be limited to eligible SDVO small businesses.  Defendants submitted requests for payments, and did so with knowledge that Ohopaki did not meet all of the requirements to be an SDVO small business. These actions also constituted common law fraud and resulted in defendants' unjust enrichment.

**FACTUAL ALLEGATIONS**

27.    On August 29, 2014 Defendant Ohopaki submitted its bid for contract W912BV-14-D-0014.  Mark Meier signed the proposal as the President of Ohopaki.  Ohopaki indicated that

it was a SDVO small business, and that it had the resources to complete the work under the management of Defendant White, the owner of Ohopaki.

28.    The bid was reviewed and compared against other SDVO small businesses.  Due to the reliance on the assertions made in the bid regarding costs, number of employees, and ability to self-perform the work, Ohopaki was awarded contract W912BV-14-D-0014.

29.    Contract W912BV-14-D-0014 was a single award task order contract which allowed for an indefinite delivery timeframe and indefinite quantity of tasks and services.  Ohopaki was required to perform various maintenance, construction, remediation, and HVAC work as needed under the contract.

30.    Defendants did not have the capability to self-perform the work under the contract at the time the bid was submitted.  Defendants did not have the tools, equipment, or employees to self-perform the work.

31.    On or about September 26, 2014, Defendants were awarded contract number W912BV-14-D-0014, a contract for construction services which was a 100% set-aside for service disabled veteran owned small businesses.

32.    Contract W912BV-14-D-0014 required construction work to be done at Tinker Air Force Base.  Contract W912BV-14-D-0014 required Ohopaki to self-perform at least twenty-five percent of the work.

33.    After contract W912BV-14-D-0014 was awarded, Defendant White determined that Trade Mechanical Contractors would do the work as subcontractors.  Defendant White delegated the day-to-day operations of Ohopaki to his Chief Financial Officer, Mark Meier.

34.    Through Mark Meier, Ohopaki hired subcontractors to perform work on behalf of Ohopaki throughout the performance of the contract.  Ohopaki had agreed to use Trade Mechanical Contracts to perform the majority of the work.

35.    Defendant White had planned on expanding Ohopaki and hiring his own workers, but instead relied upon Meier to continue to run Ohopaki to complete the contract through the use of subcontractors.

36.    Defendant White learned that Meier was an owner of Trade Mechanical Contractors.  Despite learning this, he continued to allow Meier to control the day-to-day operations of Ohopaki.

37.    Defendant White fired Meier from Ohopaki around June of 2019.  However, Defendant White still did not manage the day-to-day operations of the business.  At this time Paul Macip began managing the day-to-day operations of Ohopaki.  Ohopaki also continued to use subcontractors to perform the work done pursuant to contract W912BV-14-D-0014.

38.    Furthermore, in order to avoid detection, Defendant White added money at the end of year salaries to his salary to ensure that he was the highest paid employee during the time-period of the contract because he understood SBA guidelines required him to be the highest paid employee.

39.    Defendant Ohopaki submitted 71 invoices for payment between March 12, 2015, and December 23, 2020 despite Defendant Ohopaki, either with the knowledge, or reckless disregard for the fact, that it failed to adhere to the terms of the contract and failed to meet the standards of a SDVO small business.

40.    Each claim for payment submitted by Defendants constitute a false claim for payment to the United States.

## FIRST CLAIM FOR RELIEF

### Violations of the False Claims Act: Presentation of False Claims

41.     Paragraphs 1 through 40 are re-alleged and incorporated herein by reference.

42.     The United States seeks relief against Defendants under 31 U.S.C. § 3729(a)(1)(A) of the False Claims Act for presenting false claims between June 7, 2018, and December 23, 2020.

43.     In connection with the foregoing schemes, Defendants knowingly, or with deliberate ignorance or reckless disregard for the truth, presented and/or caused to be presented to the government false or fraudulent claims for payments.

44.      By reason of these false claims, the United States has sustained damages in an amount to be determined at trial, and is entitled to a civil penalty as required by law for each violation.

## SECOND CLAIM FOR RELIEF

### Violations of the False Claims Act: Making or Using a False Record or Statement

45.     Paragraphs 1 through 40 are re-alleged and incorporated herein by reference.

46.     The United States seeks relief against Defendants under Section 31 U.S.C. § 3729(a)(1)(B) for making or using false records or statements June 7, 2018, and December 23, 2020.

47.     In connection with the foregoing schemes, Defendants knowingly, or with deliberate ignorance or in reckless disregard for the truth, made, used or caused to made and used, false records and statements material to false and fraudulent claims that were made to the government.

48.     By reason of these false claims, the United States has sustained damages in an amount to be determined at trial, and is entitled to a civil penalty as required by law for each violation.

## THIRD CLAIM FOR RELIEF

**Violations of the False Claims Act: Conspiring to Submit or Cause to be Submitted a False Claim or to Make or Use a False Record or Statement**

49.     Paragraphs 1 through 40 are re-alleged and incorporated herein by reference.

50.     The United States seeks relief against Defendants under 31 U.S.C. § 3729(a)(1)(C).

51.     As set forth above, in connection with the foregoing schemes, Defendants and their co-conspirators knowingly, or with deliberate ignorance or in reckless disregard for the truth conspired to submit or cause to be submitted a false claim, or conspired to make, use or cause to be made or used false records and statements material to false and fraudulent claims that were made to the government, and took actions to further these conspiracies.

## FOURTH CLAIM FOR RELIEF

**Unjust Enrichment**

52.     Paragraphs 1 through 40 are re-alleged and incorporated herein by reference.

53.     Defendants made material misrepresentations of fact, with knowledge of, or in reckless disregard of, their truth, in connection with the claims for payment submitted by, or on behalf of, Defendants to the United States.

54.     Defendants intended that the United States rely upon the accuracy of the false representations referenced above.

55.     The United States made substantial payments of money in justifiable reliance upon Defendants' false representations.

11

56.     Defendants' actions caused the United States to be damaged in a substantial amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF

#### Common Law Fraud

57.     Paragraphs 1 through 40 are re-alleged and incorporated herein by reference.

58.     By reason of the payments to defendants, Defendants were unjustly enriched. The circumstances of Defendants' receipt of the contracts at issue are such that, in equity and good conscience, Defendants are liable to account for and pay such amounts, which are to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff, the United States of America, requests that judgment be entered in its favor and against Defendants as follows:

A.     On the First, Second and Third Claims for Relief (Violations of the False Claims Act, 31 U.S.C. § 3729(a)), for treble the United States' damages, in an amount to be determined at trial, plus civil penalties for each false claim presented, together with all such relief as may be just and proper;

B.     On the First, Second and Third Claims for Relief, an award of costs pursuant to 31 U.S.C. § 3729(a);

C.      On the Fourth Claim for Relief (Common Law Fraud), for an amount to be determined at trial, together with costs and interest;

D.      On the Fifth Claim for Relief (Unjust Enrichment), for an accounting and for the

amounts by which defendants were unjustly enriched, in an amount to be determined at trial,

together with costs and interest; and

E.      All other relief this Court deems just and proper, including post-judgment interest

and costs of this action.

DATED this 14th day of November 2024.

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney

*/s/Joshua M. Mitts*
Joshua M. Mitts, NYB 5639786
Assistant United States Attorneys
520 Denison Avenue
Muskogee, OK 74401
Phone: (918) 684-5111
Phone: (918) 684-5130
Email: Josh.Mitts@usdoj.gov